UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PEOPLES BANK,

Plaintiff,

v.

S/Y TEMPO, Official Number 1271877 in rem, and LUDWIG P. VOLLERS, in personam,

CASE NO. 22-1151

ORDER APPOINTING SUBSTITUTE CUSTODIAN

Plaintiff Peoples Bank, having moved this Court for an Order appointing Marine Lenders Services, LLC ("MLS") as substitute custodian, in lieu of the U.S. Marshal, of the defendant vessels S/Y TEMPO, Official Number 1271877 ("Vessel"), and all its appurtenances, and the Court having reviewed Plaintiff's Motion for Appointment of Substitute Custodian dated August 17, 2022, and the Declaration of Buck Fowler, Jr. dated August 16, 2022, in support of that Motion, makes the following recitals:

//

//

**Recitals**

1. On August 16, Peoples Bank filed its verified Complaint herein, requesting that the vessel S/Y TEMPO, Official No. 1271877 (the "Vessel"), its engines, machinery, and other appurtenances, be condemned and sold to pay plaintiff's claims and for other proper relief.

2. The Clerk of the Court will be authorized by this Court to issue a Warrant of Arrest commanding the United States Marshal for this District to arrest and take the Vessel and its appurtenances into custody and to detain it in custody until further order of this Court.

3. It is contemplated that the United States Marshal will seize the Vessel forthwith. Custody of the Vessel by the U.S. Marshal requires the services of one or more keepers at a charge of at least $1,200.00 per day per keeper, not including charges for moorage and the other services usually associated with safekeeping vessels similar to the defendant Vessel.

4. The defendant Vessel is currently believed to be moored at the Marine Servicenter in Seattle, Washington. After arrest, the Vessel may be moved to the facilities of MLS at 5350 30th Avenue NW, Seattle, Washington, or to other suitable dry storage or moorage to enhance security over the Vessel and reduce charges for security and storage of the Vessel.

5. It is anticipated that after arrest individuals may wish to remove from the Vessel clothing and items of personal property belonging to such individuals, and that persons interested in purchasing the Vessel, either in lieu of foreclosure or in anticipation of the Marshal's sale of the Vessel, may wish to board the vessel for purposes of conducting visual examinations of the Vessel and its equipment. Plaintiff is agreeable to facilitating the removal of items of personal property owned by individuals, and in facilitating interested parties in inspecting the Vessel on the terms stated in this Order.

6. Plaintiff is agreeable to allowing MLS to assume the responsibility of safekeeping the Vessel and its appurtenances, and MLS has consented to act as custodian of the Vessel and its appurtenances until further order of this Court. Fees and expenses to be charged by MLS will be substantially less than the cost of leaving the Vessel in the custody of the U.S. Marshal.

7. Buck W. Fowler Jr, Managing Member of MLS, by declaration, has stated that MLS has no interest in the outcome of this lawsuit, can arrange for adequate facilities and supervision for the proper safekeeping of the vessel, and has obtained the legal liability insurance through Great American (Policy No. CL1932503366) with policy limits of not less than $2,000,000, which is expected to be adequate to respond in damages for loss of or injury to the Vessel resulting from their legal liability or for damages sustained by third parties due to any acts, faults or negligence of the substitute custodian. Further, in his declaration, Buck W. Fowler Jr, on behalf of MLS has agreed to accept custody of the vessel and its equipment in accordance with the terms of this Order.

8. In consideration of the U.S. Marshal's consent to the appointment of MLS as substitute custodian, plaintiff agrees to release the United States and the U.S. Marshal from any and all liability and responsibility arising out of the care and custody of the defendant vessel and its equipment, from the time the U.S. Marshal transfers custody of the vessel over to the substitute custodian, and plaintiff further agrees to indemnify and hold the United States and the U.S. Marshal harmless from any and all claims whatsoever arising out of the substitute custodian's possession and safekeeping of the Vessel.

**ORDER**

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

1. That upon the seizure of the defendant vessel, the S/Y TEMPO, Official No. 1271877 (the "Vessel"), and all its appurtenances, pursuant to the Warrant of Arrest, the U.S. Marshal for the Western District of Washington is authorized and directed to surrender custody of the Vessel to Marine Lenders Services LLC ("MLS") as substitute custodian herein, and that upon such surrender, the Marshal shall be discharged from his/her duties and responsibilities for the safekeeping of the Vessel and held harmless from any and all claims arising out of said custodial services.

2. That MLS, as substitute custodian, shall see to and be responsible for the safekeeping of the Vessel. The duties of the substitute custodian shall include, but are not limited to, ensuring that there is adequate, safe dry storage or moorage for the Vessel. The substitute custodian is not required to have a person live on board the Vessel, but an officer or authorized agent of the substitute custodian shall inspect the Vessel, from time to time to carry out the duties of substitute custodian. No other person shall be allowed to enter on the Vessel except as provided for herein or as otherwise expressly authorized by order of this Court.

3. That the defendant Vessel may be moved by its own means, tug or other safe means from its present moorage or storage to adequate, safe dry storage or moorage at the facilities of the substitute custodian on the Lake Washington Ship Canal, Seattle, Washington or other suitable location. The substitute custodian shall notify the office of the U.S. Marshal that the Vessel is to be moved and shall again notify the office of the U.S. Marshal when the Vessel has been moved. Once the Vessel has been moved to the facilities of the substitute custodian or other suitable moorage, the Vessel shall not be moved again without further order of the Court.

4. That MLS, as substitute custodian, may if necessary offload any cargo, equipment or other items found aboard the Vessel and arrange for storage of the same at a suitable storage

facility. The substitute custodian shall notify the office of the U.S. Marshal prior to engaging in any such offloading and again upon the completion of any such offloading.

5. That MLS, as substitute custodian, may, if necessary, offload any fuel and arrange for disposal of the same. The substitute custodian shall notify the office of the U.S. marshal prior to engaging in any such offloading and again upon the completion of any such offloading.

6. That MLS, as substitute custodian, may, but is not required to, retain a marine engineer or other qualified individual familiar with the Vessel and to take him or her on board the Vessel with authorized agents of MLS to assist in the securing of the Vessel.

7. That MLS, as substitute custodian, may, but is not required to, remove those pieces of electronic equipment on board the Vessel, if any, which may be easily removed without damage to the Vessel, and that such removed electronic equipment shall be stored in a safe, secure storage pending further Order of this Court.

8. That MLS, as substitute custodian, may, but is not required to, retain such services as are necessary to clean the interior and/or exterior of the Vessel, remove food products with such services to be performed under the supervision of the substitute custodian.

9. That plaintiff shall arrange to pay charges for moorage or dryland storage of the Vessel and the fees, costs and legal liability insurance premiums of the substitute custodian and shall reimburse the substitute custodian for such other costs as may be incurred in conduction of the inventory of the equipment on board, in securing the Vessel, in having the Vessel cleaned, in moving the Vessel, coordinating removal of personal effects by crew members and inspections by prospective purchasers, and / or in offloading any cargo or fuel from the Vessel.

10. Prospective purchasers of the defendant Vessel and, if requested, their designated marine surveyors, may be allowed reasonable access to the Vessel for purposes of conducting

visual inspections, surveys by marine surveyors, and possible sampling of the lubricating oils of the vessel's engines, reduction gears, generators, and other rotating machinery for chemical analysis, pursuant to the following terms and conditions:

    A. All such inspections, surveys, and/or samplings shall be conducted under the supervision of the Substitute Custodian, MLS, at such times and location, and by such individuals, as may be approved by, and arranged in advance with, the substitute custodian. The costs of the substitute custodian's services for such activities shall be a *custodia legis* cost in these proceedings.

    B. Any and all persons boarding any of the Vessel for any purpose must first provide to the aforesaid Substitute Custodian a properly executed release in the form of the attached Exhibit A.

    C. No papers, equipment, supplies or other materials, with the exception of oil samples, may be removed from any of the Vessel except upon the prior written approval of the Substitute Custodian or Plaintiff's counsel.

    D. This Order does not approve sea trials by any prospective purchaser.

11. Any individual may, with the prior written permission of the substitute custodian, go aboard the Vessel for the purpose of identifying and removing clothing and other personal effects owned by that individual, and which are not furnishings, works of art, or other appurtenances of the Vessel, subject to the following conditions: Prior to any such boarding(s) the conditions stated in subparagraph 10(B), above, must first be satisfied, and prior to the removal of any personal effects, such personal effects to be removed from the Vessel must be first specifically identified in writing to Plaintiff's satisfaction and their removal specifically authorized in writing by Plaintiff or Plaintiff's counsel.

12. That subject to final approval by the Court, all fees, costs and expenses incurred by plaintiff or the substitute custodian pursuant to the terms of this Order shall be deemed administrative expenses of the U.S. Marshal.

13. That plaintiff's attorney shall send a copy of this Order to the owner of the defendant Vessel at the last address known by plaintiff, and to the address shown on the record of the U.S. Coast Guard by Certified Mail, Return Receipt Requested.

The clerk is ordered to provide copies of this order to all counsel.

Dated August 24, 2022.

Marsha J. Pechman
United States Senior District Judge